IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN DOE a/k/a ROY ANTHONY BROWN § | | |
| REG. NO. 31532-179 § | | |
| V. § | | C.A. NO. C-04-329 |
| § | | |
| BROOKS COUNTY DETENTION § | | |
| CENTER, ET AL. § | | |

**AMENDED[1] MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a federal prisoner against private actors who provide medical services to facilities that contract with the federal Bureau of Prisons ("BOP").[2] Plaintiff claims that Dr. Jose Lozano and Nurse Barbara Bueno[3] were deliberately indifferent to his serious medical needs while he was incarcerated at the Brooks County Detention Center between May 10, 2004 through July 12, 2004, in violation of his constitutional rights. He also claims that defendants' actions amount to medical negligence in violation of Texas state law. Dr. Lozano and Nurse Bueno each move for summary judgment (D.E. 117, 118), arguing that they provided adequate and appropriate care to plaintiff, and did not disregard a known or serious medical risk such that they

---

[1] The only change in the amended order is to deny as moot defendant Bueno's motion for sanctions.

[2] There is no allegation that defendants were federal actors, and therefore, plaintiff's claims are not made pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Moreover, there is no implied private right of action, pursuant to Bivens, against private entities that engage in alleged constitutional violations while acting under color of federal law. See Correctional Serv's. Corp. v. Malesko, 534 U.S. 61, 67 (2001).

[3] Barbara Bueno is now known as Barbara Paetz. See D.E. 117, attached affidavit. However, for consistency, she will be referred to herein as Nurse Bueno.

are entitled to judgment in their favor on all of plaintiff's claims. Plaintiff has filed a response in opposition (D.E. 128). For the reasons stated herein, defendants' motions for summary judgment are granted, and plaintiff's claims are dismissed on the merits.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties (D.E. 20, 69, 71), this case was referred to the undersigned to conduct all further proceedings, including entry of final judgment (D.E. 72).

## II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

While a pre-trial detainee,[4] plaintiff was first incarcerated at the Nueces County Jail, and later transferred to the Brooks County Detention Center in Falfurrias, Texas. Plaintiff filed two *pro se* complaints, this case, and Civil Action No. 04-375, that were consolidated under this cause number by Order entered August 11, 2004 (D.E. 11). In his complaints, and amended complaint (D.E. 23), plaintiff sued the Brooks County Detention Center, Nurse Barbara Bueno, Dr. Jose Lozano, Warden Niederhause, and Nurse Jane Doe. A Spears[5] hearing was held on September 14, 2004, following which plaintiff's claims against the Brooks County Detention Center and Warden Niederhause were dismissed (D.E. 27). Service was ordered on Nurse Bueno, Dr. Lozano, and Nurse Jane Doe (D.E. 28). By order entered January 21, 2005, plaintiff's claims against Nurse Jane Doe were dismissed (D.E. 39).

---

[4] Since the events at issue in this case, plaintiff entered into a plea agreement with the government and he is currently serving a 41-month sentence in the BOP. See generally Criminal No. C-04-259.

[5] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985)

Plaintiff claims to have suffered from high blood pressure predating his confinement. See D.E. 1 at attached page 4. He alleges that Nurse Bueno and Dr. Lozano failed to order the proper tests or to properly treat his high blood pressure symptoms, causing him to experience unnecessary pain. Plaintiff seeks $1.5 million in damages and injunctive relief in the form of an MRI, copies of his medical records, and he requests to be examined by a private medical doctor.

### III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motions for summary judgment, defendants offer the following:

D.E. 117, Affidavit of Barbara Bueno (n/k/a Barabara Paetz);

D.E. 118, Ex. A, Copy of Bueno Affidavit, id.; and

D.E. 118, Ex. B, report of Dr. Jeffery Steinbauer.

The following facts are not in dispute:

Plaintiff was taken to the Nueces County Jail on April 29, 2004. D.E. 1 at att. p. 4. Plaintiff was given a substitute medication for his high blood pressure. Id. Plaintiff claims this medication made his blood pressure worse, not better. Id.

On or about May 10, 2004, plaintiff was transferred to the Brooks County Detention Center ("BCDC"). Bueno Aff't at ¶ 8. At that time, it was noted that plaintiff suffered from hypertension and was taking Maxide.[6] Id.

On or about May 12, 2004, plaintiff spoke to a BCDC nurse about his medication. Bueno Aff't at ¶ 9. Plaintiff was concerned that the medication did not look the same as that prescribed by his physician in Nashville, Tennessee. D.E. 1, at att. p. 4. Plaintiff was informed that medications

---

[6] Maxide, hydrocholorothiazide, is a thiazide diuretic, that is used to lower blood pressure and decrease swelling. See www.Medications.com.

3

come in different shapes and sizes, and that he was receiving the same hypertension medication. Bueno Aff't at ¶ 9.

On May 13, 2004, plaintiff was brought to the BCDC medical office complaining of tingling in his right arm, but denying any complaints of shortness of breath or chest discomfort. Bueno Aff't at ¶10. Plaintiff's blood pressure was 110/80. Id. Though asked to remain in the medical facility for further observation, plaintiff refused to do so, and signed a medical refusal form. See Bueno Aff't, Ex. 1 (Medical Refusal Form dated May 13, 2004).

On May 22, 2004, plaintiff returned to the infirmary complaining of pain and numbness in his right shoulder/arm, lower right and back thigh and below the kneecap. Bueno Aff't at ¶11. Plaintiff was transferred via U.S. Marshal to the Spohn Brooks Clinic. Id. The Spohn Clinic indicated that he needed a CT scan to further evaluate his blood pressure. Id.

On May 25, 2004, plaintiff reported to the infirmary complaining of not feeling well with a tingling sensation to his right and left upper extremities. Bueno Aff't at ¶ 13. Plaintiff was given aspirin and asked to remain in the medical facility for observation. Id. However, plaintiff refused. See Bueno Aff't, Ex. 2 (Medical Refusal Form dated May 25, 2004).

On May 30, 2004, plaintiff complained to medical staff of right side pain and a "crawling" feeling inside. Bueno Aff't at ¶ 14. On May 31, 2004, plaintiff's blood pressure was high at 150/90; however, he refused to be housed in the medical facility for further observation and admitted that he had not taken his medications. Bueno Aff't at ¶ 15. And see Bueno Aff't, Ex. 3 (Medical Refusal Form dated May 31, 2004).

On June 2, 2004, plaintiff reported to medical complaining of discomfort in his right shoulder and arm. Bueno Aff't at ¶ 16. He denied any tingling sensation and showed no objective signs of

4

hypertension.  Id.  He was prescribed Tylenol for pain and advised to remain in the medical facility for further observation.  Id.  Plaintiff refused to stay in the medical department for observation.  Id.; Bueno Aff't, Ex. 4 (Medical Refusal Form dated June 2, 2004).

On June 4, 2004, plaintiff was transported to Spohn Hospital for a CT scan of his head. Bueno Aff't at ¶ 17.

On June 6, 2004, plaintiff complained of pain from his neck to his knee, with numbness in his right leg, thigh, knee, and upper shoulder.  Bueno Aff't at ¶ 18.  Plaintiff was concerned that he might have blood clots or nerve damage, and requested an x-ray of his right leg, arm, and shoulder. Id.

On June 7, 2004, Dr. Lozano was notified of plaintiff's request for x-rays.  Bueno Aff't at ¶ 19.  Instead, Dr. Lozano prescribed plaintiff Motrin.  Id.  Evidently, plaintiff became agitated when he learned that x-rays had not been ordered, and demanded that x-rays be taken.  Id.  However, Dr. Lozano again instructed Nurse Bueno to simply dispense Motrin.  Id.

On June 8, 2004, plaintiff requested that an x-ray be performed as soon as possible on his right side, leg, shoulder, and arm.  Bueno Aff't at ¶ 20.  Plaintiff was informed that no x-rays were ordered.  Id.    He demanded the x-rays again on June 9, 2004.  Bueno Aff't at ¶ 20.

On June 15, 2004, the BCDC medical facility received plaintiff's CT scan results, which were normal.  Bueno Aff't at ¶ 22.  The scan was negative for any prior strokes.  Id.

On June 21, 2004, plaintiff complained of numbness and pain in the right arm and right leg. Bueno Aff't at ¶ 23.  He was scheduled to see a doctor on June 23.  Id.

On June 23, 2004, plaintiff was not seen by a doctor because he was in court.  From court, plaintiff was taken to an emergency room in Corpus Christi due to complaints of high blood pressure.  Bueno Aff't at ¶ 24.

On June 27, 2004, plaintiff reported to the BCDC infirmary complaining of tingling after taking his medication.  Bueno Aff't at ¶ 25.  Plaintiff was asked to stay in the medical area for observation, but he refused.  Id.; Bueno Aff't, Ex. 5 (Medical Refusal Form dated June 27, 2004).

On June 29, 2005, plaintiff was seen at the Spohn Brooks Clinic emergency room for his high blood pressure.  Bueno Aff't at ¶ 26.  The emergency room doctor ordered a new medication.  Id.

After plaintiff returned from the Spohn Clinic, he was housed in the medical unit at BCDC until July 1, 2004, at which time he was released from observation with normal blood pressure and no complaints.  Bueno Aff't at ¶ 27.

On July 10, 2004, plaintiff got into an altercation with the guards and sustained a laceration on his right pinky and right ankle, and redness to his right shoulder.  Bueno Aff't at ¶ 28.  He was seen by medical and released.  Id.  On July 12, 2004, plaintiff was transferred from the BCDC.  Bueno Aff't at ¶ 29.

## IV.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will

be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V. DISCUSSION

### A. Deliberate indifference.

Plaintiff claims that, while a pretrial detainee at the BCDC, Nurse Bueno and Dr. Lozano were deliberately indifferent to his serious medical needs because they intentionally withheld necessary medical treatment from him, such as denying him the blood pressure medication he believed he should be taking, and denying him the x-rays he requested. At the Spears hearing, he alleged that this delay contributed to his sustaining a stroke.

Pretrial detainees held in jail are protected under the Due Process Clause of the Fourteenth Amendment, which provides that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979). Under the Due Process Clause, pretrial detainees enjoy a constitutional right "'not to have their serious medical needs met with deliberate indifference on the part of confining officials.'" United States v. Gonzales, 436 F.3d 560, 573 (5th Cir. 2006) (quoting Thompson v. Upshur County, 245 F.3d 447, 257 (5th Cir. 2001)). Deliberate indifference, as defined in the due process cases, requires both that the government have "subjective knowledge of a substantial risk of serious harm to a pretrial detainee"

and that the government official respond with "deliberate indifference to that risk." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996 (en banc).[7]

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 303.(1991); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. Farmer v. Brennan, 511 U.S. 825, 837 (1994). It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. Farmer, 511 U.S. at 837. Furthermore, negligent medical care does not constitute a valid § 1983 claim. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). See also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim"). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. "Deliberate indifference is an "extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

---

[7] Concerning medical care, the deliberate indifference standard of the Fourteenth Amendment is essentially identical to the Eighth Amendment's prohibition against cruel and unusual punishment: each is violated by an official's deliberate indifference to the serious medical needs of detainees or prisoners. See City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 243-44 (1983).

### *Nurse Bueno.*

The uncontroverted evidence in this case establishes that Nurse Bueno was not deliberately indifferent to plaintiff's serious medical needs.  Upon his entering the BCDC, plaintiff's medical history was taken and the medical staff was made aware that he suffered from hypertension and was taking Maxide.  Bueno Aff't at ¶ 8.  Plaintiff was prescribed the same hypertensive medication he had been taking, and it was explained to him that generic and brand name formulations could look different but have the same active medications.  Bueno Aff't at ¶ 9.  Plaintiff was routinely seen in the BCDC infirmary for his complaints.  In fact, from May 13 through June 27, 2004, plaintiff reported to the BCDC infirmary on eight separate occasions complaining of pain or tingling, or not feeling well.  Bueno Aff't at ¶¶ 10, 11, 13, 14, 16, 18, 23, 25.  Of those eight visits, on five occasions, plaintiff was asked to stay for further observation by medical staff, but refused to do so. See Bueno Aff't, Exs. 1-5.  On the first of such instances, his blood pressure was not hypertensive at 110/80.  Bueno Aff't at ¶ 10.  On May 22, 2004, when he complained of pain and numbness in his right shoulder/arm, he was transferred to the Spohn Brooks Clinic, where it was recommended that he receive a CT scan.  Bueno Aff't at ¶ 12.  He had the CT scan thirteen days later, and the results were normal.  Bueno Aff't at ¶ 17, ¶ 22.  On May 25, 2005, plaintiff complained of not feeling well, was prescribed aspirin and was asked to stay in medical for observation, but he again refused.  Bueno Aff't at 13; Ex. 2.  On May 30, and 31, he complained of a "crawling " feeling, but refused to be housed in medical, and he admitted he had not been taking his medications.  Bueno Aff't at ¶ 15.

Nurse Bueno's uncontroverted affidavit establishes that, every time plaintiff had a complaint, he was seen in the BCDC infirmary.  When he was in pain, he was prescribed aspirin, Motrin or

10

Tylenol. Bueno Aff't at 13, 16, 19. His blood pressure was monitored and controlled with medication. Bueno Aff't at 8. His blood pressure and hypertension condition were evaluated further by CT scan, which was normal. Bueno Aff't at 17, 22. When required, plaintiff was transported to Spohn Brooks Clinic or Spohn Hospital for more specialized medical care. Bueno Aff't at ¶¶ 11, 17, 26. Medical records of sick calls, examinations, diagnoses and medications can rebut an inmate's allegations of deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

Plaintiff complains that Nurse Bueno ignored his complaints of pain and failed to prescribe him the appropriate medications. However, as Nurse Bueno states in her affidavit, as a licensed nurse, she is not authorized to prescribe medications or order x-rays. Bueno Aff't at ¶ 4. In his response, plaintiff offers no evidence to refute Nurse Bueno's statement of the facts. See D.E. 128. He characterizes the treatment he received as "blatant neglect" and alleges an "ignorance of the ADA requirements" regarding dispensing of medications to patients. However, even if his characterization of the facts is true, his allegations amount to no more than negligence, which is not actionable. Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (malpractice or negligent medical care does not rise to the level of a constitutional violation); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) ("it is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); Williams v. Treen, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medial treatment would not support an action under Section 1983"). The facts of this case demonstrate that Nurse Bueno responded promptly and adequately to plaintiff's medical needs and that she was not deliberately indifferent.

There is no genuine issue of a material fact on plaintiff's deliberate indifference claim against Nurse Bueno, and she is entitled to summary judgment in her favor. Accordingly, Nurse Bueno's motion for summary judgment (D.E. 117) is GRANTED, and plaintiff's § 1983 claim against her is dismissed with prejudice.

### *Dr. Lozano.*

Plaintiff complains that Dr. Lozano did not order an x-ray to evaluate whether he had blood clots. However, this allegation is nothing more than a disagreement with the course of treatment and fails to state a constitutional violation. Banuelos, 41 F.3d at 235 (mere disagreement between an inmate and his physician concerning appropriateness of medical treatment not actionable). Moreover, Nurse Bueno's affidavit establishes that plaintiff's medical complaints were answered, appointments were scheduled, he was seen by medical staff and diagnoses were made, and medications were prescribed. This evidence rebuts plaintiff's allegations of deliberate indifference. Id. Plaintiff does not suggests that the treatment he received was not successful, and even if he did make such a claim, it would not be actionable. See Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985) (incorrect diagnoses or unsuccessful treatment are insufficient to establish § 1983 liability). Nor does "[m]ere negligence, neglect or medical malpractice" state a constitutional violation. Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1979).

In support of his motion for summary judgment, Dr. Lozano offers the report of Dr. Jeffery R. Steinbauer, a licensed physician, who is currently on the faculty of the Department of Family and Community Medicine, and the Geriatric Division of Internal Medicine at the Baylor College of medicine in Houston, Texas. In his February 6, 2006, report, Dr. Steinbauer reports that he has reviewed plaintiff's civil rights complaint, his medical records from the BCDC, his CT scan from

Spohn, and his records from when he was held at the Nueces County Jail. D.E. 118, Ex. B, Steinbauer report at 1. Based on his review of the records, Dr. Steinbauer concludes:

> While there are many ways to manage a patient with labile blood pressure, and various physicians have different approaches, I find no issue with the care rendered by Dr. Lozano. The patient was initially started on a diuretic, and his blood pressure was not well controlled. Dr. Lozano then started a beta blocker (metoprolol), and when this was not adequate, added a centrally acting alpha blocker (clonidine) and an ACE inhibitor (Zestril). When the patient's blood pressure remained labile, the brand name version of metoprolol mixed with a diuretic (Lopressor HCT) was added. Each of these steps falls within the guidelines of the Joint National Commission on control of Hypertension (Report VI). Furthermore, despite the patient's chronic complaints of right arm tingling, his blood pressure was not elevated to a point that would constitute hypertensive crisis. When his blood pressure was elevated, he was appropriately and promptly evaluated and even a CT scan failed to show any damage from hypertension.

D.E. 118, Ex. B. Steinbauer Report at 2-3.

Dr. Steinbauer also states that he believes it was prudent and reasonable for Dr. Lozano to *not* order x-rays to attempt to rule out blood clots based on plaintiff's symptoms. Id. at 3.

In his response, D.E. 128, plaintiff fails to address the report of Dr. Steinbauer. He suggests that the medication he was prescribed caused problems in rats and that it was placed in the market without adequate study. Those allegations, however, are not part of this lawsuit, and do not involve Dr. Lozano.

Even if plaintiff's allegations against Dr. Lozano are true and correct, that he should have ordered x-rays to evaluate his blood clots or should have prescribed a different hypertension medication, plaintiff fails to establish that Dr. Lozano acted with deliberate indifference. He has submitted no evidence to suggest that Dr. Lozano refused to treat him, ignored his complaints,

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

There is no genuine issue of a material fact for trial concerning plaintiff's claim of deliberate indifference against Dr. Lozano, and Dr. Lozano is entitled to summary judgment in his favor on this claim. Accordingly, Dr. Lozano's motion for summary judgment (D.E. 118) is GRANTED, and plaintiff's § 1983 claim against Dr. Lozano is dismissed with prejudice.

**B.     Medical malpractice.**

To establish a claim for medical negligence under Texas law, a plaintiff must show (1) a duty to conform to a certain standard of care; (2) failure to conform to that standard; (3) actual injury; and (4) a reasonable close causal connection between the conduct and the injury. Hood v. Phillips, 554 S.W.2d 160, 165 (Tex. 1977); Wheeler v. Aldama-Luebbert, 707 S.W.2d 213, 217 (Tex. App.– Houston [1st Dist.] 1986, no writ); Tilotta v. Goodall, 752 S.W.2d 160, 161 (Tex. App.– Houston [1st Dist.] 1988 writ denied). Proof of each element is required to defeat a motion for summary judgement. Wheeler, 707 S.W.2d at 217.

The threshold question in a medical malpractice case is the standard of care. Whittley v. Heston, 954 S.W.2d 119, 122 (Tex. App. – San Antonio 1997, no writ). Generally, expert testimony is required to meet a plaintiff's burden of proof in a medical malpractice case. LeNotre v. Cohen, 979 S.W.2d 723, 727-28 (Tex. App.– Houston [14th Dist.] 1989, no writ) (citing Hood, 554 S.W.2d at 165-66). Proof of causation must be more than mere speculation or conjecture. Arguello v. Gutzman, 838 S.W.2d 791, 794 (Tex. App.– 8an Antonio 1992, no writ); Campos v. Ysleta General Hospital, 836 S.W.2d 791, 794 (Tex. App.– El Paso 1992, writ denied).

14

In order to defeat a motion for summary judgment in medical malpractice actions, expert witnesses for the plaintiff must specifically identify the applicable standard of care, demonstrate that he is familiar with the standard, and explain why the treatment at issue fell below the standard. Kahanek v. Gross, 981 S.W.2d 271, 277 (Tex. App.– San Antonio 1998) (reversed in part on other grounds, Gross v. Kahanek, 3 S.W.3d 518 (Tex. 1999). Testimony that a defendant's conduct fell below the degree of care required creates a fact issue for summary judgment purposes. Kahenek, 981 S.W.2d at 277. See also Stolle v. Baylor College of medicine, 981 S.W.2d 709, 711 (Tex. App.– Houston [1st Dist.] 1998, writ denied, n.r.e.) (to raise a fact issue, plaintiff must prove defendant did something other health care providers using ordinary care would not have done); Bottoms v. Smith, 923 S.W.2d 247, 250 (Tex. App.– Houston [14th Dist.] 1996, no writ) (conflicting evidencing on whether physician complied with standard of care creates a fact issue).

### *Nurse Bueno.*

Plaintiff maintains that Nurse Bueno delayed and denied him proper medical treatment, and that her actions contributed to his suffering a stroke.

As noted *supra*, to establish a claim of negligence in a medical malpractice suit, the plaintiff must establish, *inter alia*, a reasonably close connection between the alleged breach of the standard of care and the alleged injury. Tilotta, 752 S.W.2d at 161. Proof of causation must go beyond a showing of a possibility that the plaintiff's injuries arose from the defendant's negligence or lack of skill. Hart v. Van Zandt, 399 S.W.2d 791, 792-93 (Tex. 1965); Valdez v. Lyman-Roberts Hospital, Inc., 638 S.W.2d 111, 114 (Tex. App.– Corpus Christi 1982, writ ref'd n.r.e.). The plaintiff must show reasonable probability, which is established when "absent other reasonable causal explanation, it becomes more likely than not that the injury was the result of [the

negligence]." Louis v. Parchman, 493 S.W.2d 310, 318-19 (Tex. Civ. App.– Ft. Worth 1973, writ ref'd n.r.e.).  Mere speculation or conjecture is not enough to establish a casual connection between the plaintiff's injuries and the defendant's conduct.  Campos, 836 S.W.2d at 794.  The burden of establishing causation is on plaintiff.  Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 782 (1949).

Plaintiff offers no evidence except his own speculation to support his accusation that Nurse Bueno's actions or inactions adversely affected his health.  First, although plaintiff claims to have suffered from a mild stroke, his June 4, 2004 CT scan revealed no sign of a stoke.  See Bueno Aff't at ¶ 16.  Second, plaintiff admitted to not taking his hypertension medication at times, see Bueno Aff't at ¶15, and on at least five occasions, he refused to remain in the medical unit for observation. See Bueno Aff't at ¶¶ 10, 13, 15, 16, 25.  Plaintiff's refusal to participate fully in his own health care would necessarily contribute to the difficulty in managing his hypertension.  Thus, even if Nurse Bueno had been negligent, plaintiff could not demonstrate that her negligence was the sole cause of his injury because the undisputed facts show that his own behavior, failing to take his medication or to follow the advice of his health care providers, contributed to his injury.  Plaintiff fails to establish causation, and as such, fails to establish the first element of his negligence claim against Nurse Bueno.  Nurse Bueno is entitled to summary judgment in her favor, her motion for summary judgment on plaintiff's medical malpractice claim is GRANTED, and this claim is dismissed with prejudice.

### *Dr. Lozano.*

Plaintiff claims that Dr. Lozano's treatment fell below the standard of care because he failed to order x-rays to evaluate his blood clots and/or delayed proper treatment.  Plaintiff also seems to

16

object to the fact that it took approximately seven weeks, between May 12, 2004 and July 1, 2004, before Dr. Lozano had plaintiff's hypertension better controlled with a variety of medications.

Dr. Lozano has offered the expert opinion of Dr. Steinbauer who states that he has personal knowledge of both the global standard of care for hypertension and the medical standard of care for treating patients in prison and in the free world. Dr. Steinbauer concludes that Dr. Lozano's course of treatment for plaintiff did not fall below or deviate from the appropriate standard of care. See D.E. 118, Ex. B. Dr. Steinbauer reviewed in detail Dr. Lozano's course of treatment for plaintiff and found that it met with the guidelines set forth by the Joint National Commission on control of Hypertension (Report VI). Id. Dr. Steinbauer found Dr. Lozano's decision to not order x-rays "reasonable, prudent, and proper given Mr. Brown's symptoms." Id. Dr. Steinbauer's report is undisputed evidence that Dr. Lozano's course of treatment met the appropriate standard of care, and plaintiff has failed to offer any evidence to suggest that Dr. Lozano's actions fell below that standard. As such, plaintiff has failed to establish an issue for trial. Kahenek, 981 S.W.2d at 277. Dr. Lozano is entitled to judgment in his favor on plaintiff's medical negligence claims, and plaintiff's negligence claims against Dr. Lozano are dismissed with prejudice.

## VI. CONCLUSION

Plaintiff fails to establish that there exists a genuine issue of material fact regarding his claims of deliberate indifference and medical malpractice against Nurse Bueno and Dr. Lozano, and defendants are entitled to summary judgment as a matter of law. Accordingly, defendants' motions for summary judgment (D.E. 117, 118) are granted, and plaintiff's claims against Nurse Bueno and

Dr. Lozano are dismissed with prejudice. Defendant Bueno's motion for sanctions (D.E. 120) is denied as moot.

ORDERED this 25th day of May, 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE